2005 ME 4

**NORTHWOODS LAND COMPANY OF MAINE, LLC**

v.

**KENNEBUNK, KENNEBUNKPORT & WELLS WATER DISTRICT.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Oct. 6, 2004.

Decided: Jan. 10, 2005.

John J. Wall III, Esq., Monaghan Leahy, LLP, James A. Hopkinson, Esq., Hopkinson & Abbondanza, Portland, for plaintiff.

Patrick J. Scully, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Northwoods Land Company of Maine, LLC, appeals from a summary judgment entered in the Superior Court

(York County, *Brennan, J.*) declaring that its petition to the York County Commissioners for an assessment of eminent domain damages was untimely and that the condemnation amount established by the Kennebunk, Kennebunkport & Wells Water District was final. We agree with Northwoods that its petition to the county commissioners was timely, and we vacate the judgment.

## I. BACKGROUND

[¶ 2] The Kennebunk, Kennebunkport & Wells Water District is a quasi-municipal corporation created in 1921 by the Legislature, and its charter is found at P. & S.L.1921, ch. 159, amended by P. & S.L. 1957, ch. 86. The Legislature granted the District the power of eminent domain. Pursuant to that power, the District issued a condemnation order for a parcel of land owned by Northwoods. It served the condemnation order on Northwoods on March 15, 2002, along with a check for $85,000.

[¶ 3] Northwoods returned the check to the District with a letter stating that it rejected the damages amount, specifying its reasons, and making a counter-offer. The District again sent the check of $85,000 to Northwoods and offered to discuss the condemnation order. A few months later the District notified Northwoods that the time to contest the condemnation award had expired.

[¶ 4] On May 27, 2003, Northwoods took two steps: (1) it filed a petition with the York County Commissioners asking them to assess damages for the taking of its land by the District; and (2) it filed a complaint for a declaratory judgment in the Superior Court, seeking an interpretation of the District's charter and a declaration that Northwoods was not precluded by any time limitation from pursuing relief before the county commissioners. The commissioners stayed action on the petition pending the Superior Court decision. In the Superior Court, the District moved for a summary judgment, and the parties stipulated to the pertinent facts. The court entered a summary judgment in favor of the District, concluding that Northwoods had not filed a timely petition with the commissioners and that the condemnation award was final.

## II. DISCUSSION

[¶ 5] It is axiomatic that we review the grant of a summary judgment de novo. The only issue we discuss is whether Northwoods' petition to the county commissioners is untimely.

[¶ 6] To determine whether Northwoods was too late to petition the commissioners to assess damages for the taking of its land, we look first to the provisions in the District's charter regulating its power of eminent domain. The charter requires the District to file with the county commissioners a plan containing the location of the land to be taken. P. & S.L.1957, ch. 86, § 3. With regard to the amount of compensation to be paid for the land, the relevant portion reads:

> If any person sustaining damages by any taking as aforesaid shall not agree with said district upon the sum to be paid therefore, either party, upon petition to the county commissioners of York county, may have such damages assessed by them. The procedure and all subsequent proceedings and right of appeal therefrom shall be had under the same restrictions, conditions and limitations as are or may be by law prescribed in the case of damages by the laying out of highways.

P. & S.L.1957, ch. 86, § 3.

[¶ 7] The charter itself contains no time limitation for petitioning the county commissioners to assess damages. Because

the charter adopts procedures for the assessment of damages by the commissioners from other laws concerning eminent domain proceedings for highways, we examine the statutory schemes for assessing damages for highway takings. The parties have called our attention to three different highway eminent domain laws. First there is the statutory scheme concerning town ways. 23 M.R.S.A. §§ 3021–3035 (1992 & Supp.2004). The municipal officers or the municipality determines the amount of damages for eminent domain for town ways. 23 M.R.S.A. § 3023 (1992). A person aggrieved by that determination may appeal to the Superior Court within sixty days. 23 M.R.S.A. § 3029 (1992).

[¶ 8] Second are the statutes dealing with the laying out of county highways. 23 M.R.S.A. §§ 2051–2067 (1992 & Supp. 2004). The county commissioners estimate the amount of damages, 23 M.R.S.A. § 2057 (1992), from which an appeal may be taken to the Superior Court, 23 M.R.S.A. § 2058 (1992). The appeal must be filed within thirty days. *Id.*

[¶ 9] Third are the statutes concerning state highways. 23 M.R.S.A. §§ 151–161 (1992 & Supp.2004). The statutory scheme for determining damages when the State exercises eminent domain for state highways requires the Department of Transportation to negotiate an agreement of just compensation with the owner. 23 M.R.S.A. § 154(2)(H) (Supp.2004). If the amount offered by the Department is not acceptable, the owner may apply to the Department for a referral to the State Claims Commission within sixty days. *Id.* Even if the owner does not apply, the Department, immediately upon the expiration of the sixty days, "shall" file a petition with the State Claims Commission if no agreement has been reached. 23 M.R.S.A. § 155 (1992). The Commission then holds a hearing and makes an award, 23

M.R.S.A. § 156 (1992 & Supp.2004), from which any party may appeal to the Superior Court within thirty days, 23 M.R.S.A. § 157 (1992 & Supp.2004).

[¶ 10] Although the District's charter adopts the procedure for establishing damages in highway eminent domain proceedings, none of the proceedings for town, county, or state highways involve a petition to the county commissioners. For municipal and county highways, the municipality or the county commissioners initially assess the damages. There is no provision for a hearing before a board or agency. If the landowner is dissatisfied with the amount determined by the municipality or the county, the owner's resort is to the Superior Court.

[¶ 11] The state highway scheme differs from the municipal and county schemes in that an agency, the State Claims Commission, assesses the amount of damages in the absence of an agreement. In this respect, the state highway eminent domain scheme is more similar to the District's process than the schemes for town or county ways.

[¶ 12] Unlike any of the highway eminent domain statutes, the District's charter does not contain a deadline. It is not reasonable to assume that, in enacting the charter, the Legislature intended that the petition to the county commissioners be governed by the time limits for a court appeal in the town way or county highway schemes because those time periods specifically pertain to appeals to the Superior Court. It is more likely that the Legislature intended that either the sixty-or thirty-day limits apply to appeals to the Superior Court from an assessment by the county commissioners of a District taking.

[¶ 13] Likewise, it is doubtful that the Legislature intended to adopt the initial sixty-day period in the state highway scheme because it applies specifically to a

proceeding before the State Claims Commission. If we were to interpret the charter as adopting the time periods applicable to state highway takings, we would also have to import the requirement in section 155 for the taking agency to initiate an assessment request even when the owner fails to do so. Here, the District did not request the county commissioners to make an assessment. Therefore, applying the state highway takings process to the District would achieve no different result than the one we reach. The most reasonable interpretation of the legislative intent in the District's charter is that the Legislature intended to leave the timing of an assessment by the county commissioners to the parties. The Legislature expressly provided that either the District or the landowner can ask for the assessment.

[¶ 14] Although the District raises the specter that many matters will never be finally resolved if there is no time limit for the filing of the petition, such fear is without foundation because the District itself has the power to ask the county commissioners to assess damages. Obviously, if the landowner does not petition for an assessment within a reasonable time and the District needs to complete the taking, the District should petition the county commissioners. The District does not have to wait for the landowner to do so. Once the county commissioners assess the damages, any appeal from that determination to the Superior Court would be within the time limitation of one of the highway eminent domain statutes.

[¶ 15] Because we conclude that there is no applicable time limitation within which Northwoods was required to file a petition to the county commissioners, we vacate the court's declaration that the proceeding before the county commissioners was barred by time and that the amount of damages determined by the District is final. We

remand the matter to the Superior Court to enter a judgment declaring that Northwoods' petition is timely. Such a judgment will allow the matter presently stayed before the county commissioners to go forward.

The entry is:

Judgment vacated and case remanded to the Superior Court for the entry of a judgment as stated herein.